IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| ANTHONY QUINN WILSON, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | NO. 1:17-cv-00042 |
| v. | ) | |
| | ) | JUDGE CAMPBELL |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM

### I. INTRODUCTION

Pending before the Court are Movant's *pro se* Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 (Doc. No. 1); Movant's counsel's Amended Motion to Vacate, Set Aside or Correct Under 28 U.S.C. § 2255 (Doc. No. 5); the Government's Response (Doc. No. 6); and Movant's Reply (Doc. No. 9). For the reasons set forth below, Movant's Motions (Doc. Nos. 1, 5) are **DENIED**, and this action is **DISMISSED**.

### II. MOVANT'S CRIMINAL PROCEEDINGS

On March 24, 2010, a federal grand jury indicted Movant in a four-count indictment. (Criminal Case No. 1:10-cr-00003, Doc. No. 1). Counts One, Two and Three charged Movant with distributing and possessing with intent to distribute a quantity of crack cocaine in violation of 21 U.S.C. § 841(a)(1). *Id*. at 1-2. Count Four charged Movant with possessing with intent to distribute five grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1). *Id*. at 2. On July 1, 2013, pursuant to the parties' plea agreement under Fed. R. Crim. P. 11(c)(1)(C), Movant pled guilty, before now-retired Judge William J. Haynes, Jr., to Count One of the indictment, in exchange for which the Government agreed to dismiss Counts Two through Four. *Id*., Doc. Nos.

65-66, 81, and Doc. No. 97, at 2. Under the plea agreement, Movant agreed that he qualified as a career offender under the Sentencing Guidelines, and the parties estimated Movant's guideline range to be 151 to 188 months of imprisonment. *Id*., Doc. No. 97, at 6-7. The parties ultimately agreed to a sentence of 176 months of imprisonment. *Id*. at 8. Additionally, Movant agreed to waive his right to appeal his sentence and the right to challenge his sentence imposed in any collateral attack, including a motion filed under 28 U.S.C. § 2255 and/or § 2241. *Id*. at 10.

Movant subsequently moved to withdraw his guilty plea, which was later denied. *Id*., Doc. Nos. 71, 87, 88, 91, 93. Movant also filed *pro se* motions to withdraw and substitute his counsel, Hershell D. Koger, who was the third defense counsel appointed to Movant. *Id*., Doc. Nos. 29-30, 40, 48, 69, 89. As a result, the Court appointed an additional counsel, James Kevin Cartwright, to review the file and discuss with Movant the performance of Movant's current counsel. *Id*., Doc. Nos. 76-77; Doc No. 116, at 8-9. On February 28, 2014, the Court conducted a hearing regarding Movant's motions. *Id*., Doc. Nos. 91, 111. The Court denied Movant's motions to withdraw and substitute counsel, but, for sentencing purposes, allowed Koger to withdraw and for Cartwright to continue representing Movant. *Id*., Doc. Nos. 86, 92; Doc. No. 111, at 14-15.

At the April 20, 2015 sentencing hearing, the Court adopted the Presentence Investigation Report ("PSR"), which reflected that Movant qualified as a career offender according to the following prior Tennessee convictions: (1) a February 7, 2000 conviction for Possession of Cocaine for Resale; (2) a February 14, 2001 conviction for Sale of Cocaine; (3) a separate February 14, 2001 conviction for Sale of Cocaine; and (4) a February 14, 2001 conviction for Possession of Cocaine for Resale. *Id*., Doc. No. 103, at ¶ 22; Doc. No. 96; Doc. No. 99, at 1. Based upon the PSR, the Court determined that Movant's total offense level was 29, his criminal history category was VI and his advisory guideline range was 151 to 188 months of imprisonment. *Id*., Doc. No.

103, at ¶¶ 25, 58; Doc. No. 112, at 4; Doc. No. 99, at 1. The Court imposed the parties' agreed-upon sentence of 176 months. Doc. Nos. 98, 99, 112.

Movant timely appealed the denial of his motion to withdraw the guilty plea. *Id.*, Doc. No. 100. On June 23, 2016, while Movant's appeal was pending, the Supreme Court decided *Mathis v. United States*, --U.S.--, 136 S. Ct. 2243 (2016). On June 30, 2016, the Sixth Circuit denied Movant's appeal. (Criminal Case No. 1:10-cr-00003, Doc. No. 117). Movant subsequently filed a *pro se* motion to Recall the Mandate, arguing that the Supreme Court's intervening decision in *Mathis* called into question the correctness of his sentence. (Civil Case No. 1:17-cv-00042, Doc. No. 1, at 14-15). On April 6, 2017, the Sixth Circuit denied the motion, noting that Movant's argument "plainly question[ed] the legality of his sentence" and should therefore be "properly raised in a 28 U.S.C. § 2255 motion." *Id.* at 15.

On May 4, 2017, Movant filed his Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255. (Civil Case No. 1:17-cv-00042, Doc. No. 1). The Court appointed the Federal Public Defender to represent Movant and to file an amended motion. (Doc. No. 2). On June 19, 2017, Movant's counsel's filed an Amended Motion to Vacate, Set Aside or Correct Under 28 U.S.C. § 2255. (Doc. No. 5). On January 24, 2018, this civil action was transferred to the undersigned. (Doc. No. 10).

## III. ANALYSIS

### A. Movant's Claims

In both his *pro se* Motion to Vacate and Amended Motion to Vacate, Movant contends that under *Mathis* he was improperly sentenced as a career offender because his prior Tennessee felonies categorically fail to qualify as predicate "controlled substance offenses" for the career offender enhancement under the Sentencing Guidelines. Movant also contends in his amended

motion to vacate that his counsel was ineffective for failing to challenge, at sentencing, during plea and sentencing negotiations, and on direct appeal, that Movant's prior drug convictions should not count as predicates to his classification as a career offender. In its response, the Government does not address Movant's *Mathis* claim on the merits, but argues that Movant waived his right to attack his sentence pursuant to 28 U.S.C. § 2255 in an enforceable plea agreement. The Government also argues that Movant failed to carry his burden of establishing an ineffective assistance of counsel claim.

**B. Section 2255 Proceedings**

Movant filed this action pursuant to 28 U.S.C. § 2255. Section 2255 provides a statutory mechanism for challenging the imposition of a federal sentence:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

To prevail on a Section 2255 motion, a movant "'must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of Section 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A movant can prevail on a Section 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." *Watson v. United*

*States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotation marks and additional citation omitted)).

A Section 2255 motion is not a substitute for a direct appeal. *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). Consequently, as a general rule, any claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the movant shows "(1) 'cause' excusing [the] procedural default, and (2) 'actual prejudice' resulting from the errors," *United States v. Frady*, 456 U.S. 152, 168 (1982), or demonstrates that he is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted). A claim of ineffective assistance of counsel is not subject to the procedural-default rule. *Massaro v. United States*, 538 U.S. 500, 504 (2003). An ineffective-assistance claim may be raised in a collateral proceeding under Section 2255, regardless of whether the movant could have raised the claim on direct appeal. *Id*.

If a factual dispute arises in a Section 2255 proceeding, the court is to hold an evidentiary hearing to resolve the dispute. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). An evidentiary hearing is not required, however, if the record conclusively shows that the movant is not entitled to relief. 28 U.S.C. § 2255(b); *Ray*, 721 F.3d at 761; *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). A hearing is also unnecessary "'if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Monea v. United States*, 914 F.3d 414, 422 (6th Cir. 2019) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)).

Having carefully reviewed the record in Movant's underlying criminal action, as well as the filings in this action, the Court finds it unnecessary to hold an evidentiary hearing to resolve

Movant's claims. The record conclusively establishes that Movant is not entitled to relief on his claims for the reasons set forth herein.

**C. Movant's *Mathis* Claim**

Movant contends that, in light of *Mathis,* because his prior Tennessee drug convictions are not categorically "controlled substance offenses" under the Sentencing Guidelines, he lacked the necessary predicate convictions to qualify as a career offender under § 4B1.1 of the Sentencing Guidelines. A defendant is properly designated a career offender under section 4B1.1(a) if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).

The Sentencing Guidelines define a "controlled substance offense" as:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

*Id*. § 4B1.2(b).[1]

To determine whether a prior conviction qualifies as a controlled substance offense under § 4B1.2, courts employ a "categorical approach," under which sentencing courts compare the statutory elements of the prior conviction, while ignoring the particular facts of that case, to the elements of a controlled substance offense as defined in § 4B1.2(b). *Mathis*, 136 S. Ct. at 2248; *Descamps v. United States*, 570 U.S. 254, 261 (2013); *United States v. Johnson*, 933 F.3d 540, 543

---

[1] Although an earlier version of the Sentencing Guidelines Manual was applied at Movant's sentencing, the "controlled substance offense" definition has not changed.

(6th Cir. 2019) ("When a statute sets out a single set of elements, the statute is indivisible, and courts apply the categorical approach to the statute in its entirety."). Courts "must presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized, and then determine whether even those acts are encompassed by the generic federal offense." *Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013) (citation omitted and alteration in original). If the statute of conviction is broader than the generic offense, the statute cannot qualify as a predicate conviction, regardless of the particular facts of the case. *Mathis*, 136 S. Ct. at 2248-49. However, "there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" *Moncrieffe*, 569 U.S. at 191 (citation omitted).

Where the statute of conviction is "divisible," that is, the statute "list[s] elements in the alternative, and thereby define[s] multiple crimes," courts may employ the "modified categorical approach" to evaluate which of the alternative elements listed were integral to the offense of conviction. *Id.* at 2249. The "modified categorical approach" serves solely "as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque," and "[i]t is not to be repurposed as a technique for discovering whether a defendant's prior conviction, even though for a too-broad crime, rested on facts (or otherwise said, involved means) that also could have satisfied the elements of a generic offense." *Id.* at 2253-54 (citation and footnote omitted). In applying a "modified categorical approach," "a sentencing court may look to the 'charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented,' in order to determine whether the prior crime qualifies as a controlled substance offense." *United States v. Montanez*, 442 F.3d 485, 489 (6th Cir. 2006) (quoting *Shepard v. United States*, 544 U.S. 13, 16 (2005));

7

*United States v. Williams*, 762 F. App'x 278, 282 (6th Cir.), *cert. denied*, 139 S. Ct. 2684 (2019). Once the crime of conviction is determined, the court can then make the comparison of elements required by the categorical approach. *Mathis*, 136 S. Ct. at 2249.

In *Mathis*, the Supreme Court addressed "a Circuit split over whether [the Armed Career Criminal Act's] general rule--that a defendant's crime of conviction can count as a predicate only if its elements match those of a generic offense--gives way when a statute happens to list various means by which a defendant can satisfy an element." *Id*. at 2251. The Supreme Court answered in the negative, holding that courts cannot use the "modified categorical approach" to determine the specific means by which a defendant committed a crime. *Id*. at 2247-48, 2251, 2253-54. The Supreme Court explained that the "first task for a sentencing court faced with an alternatively phrased statute is . . . to determine whether its listed items are elements or means. If they are elements, the court should . . . review the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction, and then compare that element (along with all others) to those of the generic crime." *Id*. at 2256 (citation omitted). However, if they are means, "the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution," and "the court may ask only whether the *elements* of the state crime and generic offense make the requisite match." *Id*. (emphasis in original); *see Banks v. United States*, 773 F. App'x 814, 818 (6th Cir.), *cert. denied*, 140 S. Ct. 408 (2019) (citations omitted and emphasis in original) ("Some statutes, however, will list only separate *means* . . . to commit a *single* crime . . . . For these statutes, courts revert to the categorical approach by asking if the entire offense--including the *least* forceful 'means' of violating it--falls within the elements clause.").

The Court understands Movant to contend that the Tennessee statute underlying his prior convictions, Tennessee Annotated § 39-17-417(a)(4), under which he apparently concedes that he

8

was convicted, is not divisible. Section 39-17-417(a)(4) provides that it is an offense for a defendant to knowingly "[p]ossess a controlled substance with intent to manufacture, deliver or sell the controlled substance." "'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." *Id*., § 39-17-402(6). Movant essentially contends that the "least objectionable conduct" under § 39-17-417(a)(4) includes "administering"[2] a controlled substance, which falls within the scope of § 39-17-402(6)'s definition of "delivery," but does not fall within the definition of a "controlled substance offense" under § 4B1.2(b) of the Sentencing Guidelines.

Movant argues that "'delivery' can be committed by 'administering' or 'dispensing'[3] a controlled substance." (Doc. No. 5, at 6). Movant argues, in essence, that because § 39-17-402(9) defines "distribute" as "to deliver *other than* by administering or dispensing a controlled substance," the statute therefore implies that "administering" is a form of delivery. (*Id*.) Movant further argues the following:

> Thus, under Tennessee law, the 'least objectionable conduct' contemplated under § 39-17-417(a)(4) is to possess with the intent to 'administer' a controlled substance. This plainly does not suffice to meet the definition of a 'controlled substance offense' under U.S.S.G. § 4B1.2(b). That definition requires an offense to prohibit 'the manufacture, import, export, distribution, or dispensing of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense.' This definition is considerably narrower than a Tennessee conviction, because the career offender definition does not encompass 'administering' a drug or 'possessing with the intent to administer' a drug. Accordingly, Mr. Wilson's prior possession-with-intent felonies were categorically not 'controlled substance offense' under U.S.S.G. § 4B1.2.

---

[2] "'Administer' means the direct application of a controlled substance." Tenn. Code. Ann. §39-17-402(1).

[3] "'Dispense' means to deliver a controlled substance to an ultimate user or research subject by or pursuant to the lawful order of a practitioner, including the prescribing, administering, packaging, labeling, or compounding necessary to prepare the substance for that delivery." Tenn. Code Ann. § 39-17-402(7).

9

*(Id*. at 7.)

The Sixth Circuit, in a subsequently vacated panel opinion, rejected this argument. *See United States v. Havis*, 907 F.3d 439 (6th Cir. 2018), *reh'g en banc granted, opinion vacated*, 921 F.3d 628 (6th Cir. 2019), *and on reh'g en banc*, 927 F.3d 382 (6th Cir. 2019), *reconsideration denied*, 929 F.3d 317 (6th Cir. 2019).[4] Although this decision was vacated, the defendant in that case did not seek rehearing *en banc* on his "administering" argument, and the *en banc* Court did not address that argument. *See United States v. Havis*, 927 F.3d at 384 n.2. In the vacated panel opinion, the Sixth Circuit noted that the defendant argued "that under Tennessee law, delivery encompasses *any* act of administering a drug, such that someone could be convicted of delivering a drug by administering it in Tennessee in a manner that would not constitute 'dispensing' under the Guidelines." *Havis*, 907 F.3d at 447 (emphasis in original). The Court concluded that, although the defendant articulated a plausible theory that the Tennessee statute covers a broader range of conduct than the Guidelines, he failed to "show that it could realistically occur." *Id*.; *see id*. at 446 (citing *Moncrieffe*, 569 U.S. at 191 ("there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'") (citation omitted)). The Court stated:

> First, the plain text of Tennessee's statute does not command [the defendant's] interpretation. [The defendant] would have us infer that delivery under Tennessee law includes any type of administering a drug. He suggests that we draw this inference from Tennessee's definition of "distribute," which is "to deliver *other than by administering* or dispensing a controlled substance." Tenn. Code. Ann. § 39-17-402(9) (emphasis added). So, [the defendant] reasons, if one can deliver drugs *other than by administering* them (at least in the context of distributing), delivery must be the broader genus of administering's species. But [the defendant]

---

[4] In the *en banc Havis* decision, the Sixth Circuit concluded that Tenn. Code Ann. § 39-17-417, in particular subsection (a)(2), is broader than a generic controlled substance offense under the Sentencing Guidelines because it also criminalizes "attempted" delivery of a controlled substance. *See Havis*, 927 F.3d at 387. Here, Movant concedes that his conviction is under subsection (a)(4) of Tenn. Code Ann. § 39-17-417.

10

does not find much support for this argument in Tennessee's separate definitions of "deliver" and "administer." If every act of administering was a delivery, one would expect some sort of reference to administering in Tennessee's definition of "deliver" or some reference to delivery in Tennessee's separate definition of "administer." There is none. *Id*. § 39-17-402(1), (6). And even if delivery includes *some* administering, [the defendant] also fails to explain why we would not read Tennessee's definition of "deliver" to include administering drugs only to the extent specified in Tennessee's definition of "dispense" (which happens to match that under federal law). *Id*. § 39-17-402(6)-(7); 21 U.S.C. § 802(10); *see United States v. Stauffer Chem. Co.*, 684 F.2d 1174, 1186 (6th Cir. 1982) ("Different portions of the same statute should be read and interpreted consistently with each other, avoiding conflicts.").

Second, [the defendant] cites no cases showing that Tennessee actually charges delivery based on administering a drug in a manner that would not constitute dispensing it. And here again, several other circuits have rejected similar challenges on the same grounds. Thus, [the defendant's] final argument is unavailing.

*Id*. (citations omitted and emphasis in original).

In *Whyte v. United States*, No. 3:16-CV-02622, 2019 WL 2524095 (M.D. Tenn. June 19, 2019), Judge Trauger addressed a virtually identical argument as Movant's and found the argument unpersuasive, stating that Whyte had "not shown that an arrest and conviction for possession with intent to *administer* in a form that does not also constitute *dispensing* would realistically occur or ever has occurred in Tennessee." *Id*. at *6 (emphasis in original). In doing so, the court relied on the rationale in *Havis*, 907 F.3d at 447, which it noted was not disturbed at rehearing *en banc*. *Id*. at *6-7; *see Dubose v. United States*, No. 116CV01250JDBJAY, 2020 WL 53561, at *2 n.6 (W.D. Tenn. Jan. 3, 2020) (where the movant's argument that "delivery" under Tenn. Code Ann. § 39-17-417(a) was broader than the Guidelines' definition of a controlled substance offense because it included "administering" drugs, the district court noted that the panel in *United States v. Havis*, 907 F.3d 439 rejected the "administering" argument and "[t]hat portion of the panel decision was not disturbed at rehearing *en banc*."); *Gamble v. United States*, No. CV 16-02527, 2020 WL 475832, at *13 (W.D. Tenn. Jan. 29, 2020) ("Subsection (a)(4) [under Tenn. Code Ann. § 39-17-

11

417] does not criminalize attempted possession of a controlled substance and is not overbroad under the categorical approach."). Recently, the Sixth Circuit affirmed Judge Trauger's opinion in *Whyte*. *See Whyte v. United States*, No. 19-5682, 2020 U.S. App. Lexis 3526 (6th Cir. Feb. 5, 2020); *see also United States v. Little*, No. 19-5064, 2019 U.S. App. Lexis 31222, at *9 (6th Cir. Oct. 18, 2019) (finding that a Tennessee conviction for "[u]nlawful possession of a controlled substance with intent to sell, i.e., distribute, fits squarely within the guideline definition of a controlled substance offense.").

Accordingly, based upon the rationale and case authority cited above, the Court concludes that Movant's *Mathis* claim is without merit as Movant's prior drug convictions under Tenn. Code Ann. § 39-17-417(a)(4) qualify him as a career offender and *Mathis* does not undermine his classification or sentence.

## D. Ineffective Assistance of Counsel Claim

Movant contends, in essence, that he received ineffective assistance of counsel during plea negotiations, at sentencing and on appeal because his counsel failed to object or argue under the case law as it existed pre-*Mathis* that his convictions under Tenn. Code Ann. § 39-17-417(a)(4) did not qualify as controlled substance offenses under § 4B1.2(b) of the Sentencing Guidelines.

To establish ineffective assistance of counsel, the movant must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If the movant fails to make either of these showings, the ineffectiveness claim is defeated. *Id*. at 700. In *Strickland*, the Supreme Court cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and must avoid the "second-guess[ing of] counsel's assistance . . . [, as] it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or

omission of counsel was unreasonable." *Id*. at 689. In analyzing counsel's performance, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. Courts must "assess counsel's performance based on 'counsel's perspective at the time,' 'considering all the circumstances,' rather than 'in the harsh light of hindsight.'" *Snider v. United States*, 908 F.3d 183, 192 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 1573 (2019) (citations omitted).

To establish prejudice, the movant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*.

At the time of Movant's plea and sentencing (and for a period of time after *Mathis*), the Sixth Circuit "had consistently ruled that Section 39-17-417 was categorically a controlled substance offense." *Whyte*, 2020 U.S. App. Lexis 3526, at *5 (citing *United States v. Alexander*, 686 F. App'x 326, 327-28 (6th Cir. 2017) and *United States v. Douglas*, 563 F. App'x 371, 377-78 (6th Cir. 214)); *see also Franklin v. United States*, No. 17-6519, 2018 WL 3064562, at *2 (6th Cir. May 11, 2018) (stating that there was no reason that *Mathis* would change Sixth Circuit precedent that had always treated a violation of § 39-17-417 as a categorical controlled substance offense and holding that reasonable jurists could not disagree that the defendant's conviction under section 39-17-417(a)(4) remained a predicate offense).

At the time of Movant's sentencing and when he filed his direct appeal, *Mathis* had not been decided. The Sixth Circuit has "repeatedly held that counsel is not ineffective for failing to predict developments in the law, unless they were clearly foreshadowed by existing decisions." *Snider*, 908 F.3d at 192 (collecting cases). Further, "[c]ounsel is not constitutionally ineffective

13

for failing to raise a meritless objection." *Whyte*, 2020 U.S. App. Lexis 3526, at *5 (citing *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013)). Here, any argument that Movant's convictions under Tenn. Code Ann. § 39-17-417(a)(4) were not controlled substance offenses under U.S.S.G. § 4B1.2(b) would have been and still is meritless. *Id*. at *5-6; *Little*, 2019 U.S. App. Lexis 31222, at *9. Thus, under these circumstances, counsel's failure to argue, during plea and sentencing negotiations or at anytime on appeal, that his convictions under § 39-17-417(a)(4) did not qualify as career offender predicates was not deficient performance and did not prejudice Movant. Further, even if counsel could or should have raised this argument during plea and sentencing negotiations or on appeal, this argument is without merit and therefore would not have had any likelihood of reducing Movant's sentence.[5,6]

## IV. CONCLUSION

For the reasons set forth above, the Court concludes Movant's request for Section 2255 relief is without merit. Accordingly, Movant's motions to vacate are denied, and this action is dismissed.

If Movant gives timely notice of an appeal from the Court's Memorandum and Order, such notice shall be treated as an application for a certificate of appealability, 28 U.S.C. § 2253(c),

---

[5] In his reply, Movant incorrectly states that the Sixth Circuit did not issue its mandate on Movant's appeal until more than three months after *Mathis* was decided and that appellate counsel could "certainly be charged with the failure to raise this issue on appeal." (Doc. No. 9, at 4). *Mathis* was decided on June 23, 2016. 136 S. Ct. 2243. Movant's appeal was denied June 30, 2016, and the mandate issued on July 26, 2016. (Criminal Case No. 1:10-cr-00003, Doc. Nos. 117-18). However, the Sixth Circuit denied Movant's *pro se* motion to Recall the Mandate, stating that Movant's *Mathis* claim should be raised in a Section 2255 motion. (Civil Case No. 1:17-cv-00042, Doc. No. 1, at 14-15). In any event, as Movant's *Mathis* claim is without merit, Movant fails to show he suffered any prejudice.

[6] Given the Court's determination that Movant's claims are without merit, it is unnecessary to consider the Government's argument based on the waiver clause in the Plea Agreement.

14

which will not issue because Movant has failed to make a substantial showing of the denial of a constitutional right. *Castro v. United States*, 310 F.3d 900 (6th Cir. 2002).

    It is so **ORDERED**.

                                                                 _____
                                                                   WILLIAM L. CAMPBELL, JR.
                                                                   UNITED STATES DISTRICT JUDGE